**Dallas Carl TATE, Appellant**

**v.**

**The STATE of Texas**

**NO. PD-0730-15**

Court of Criminal Appeals of Texas.

Delivered: September 21, 2016

Sharon Lynn Switzer, Switzer | Oney Attorneys At Law, Gainsville, for Appellant.

John R. Messinger, Assistant State Prosecuting Attorney, Lisa C. McMinn, State's Attorney, Austin, for the State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, ALCALA, RICHARDSON, YEARY, and NEWELL, JJ., joined.

Dallas Carl Tate was convicted of possession of a controlled substance and was sentenced to two years' confinement. The court of appeals reversed his conviction, holding that there was insufficient evidence to prove that he intentionally or knowingly possessed the controlled substance in question. We will reverse the judgment of the court of appeals and affirm the judgment of the trial court.

## FACTS

In the afternoon of December 3, 2013, Detective Rick Beckham of the Bowie Police Department recognized Tate driving a vehicle and initiated a traffic stop, believing that he had outstanding warrants. Two female passengers (and a dog) were also in the car. One of the passengers was sitting in the front seat, and the other was sitting in the back seat. After approaching the driver's side of the vehicle, Beckham immediately asked Tate to get out, which he did, and they walked to the back of the vehicle, standing between the front of Beckham's vehicle and the rear of Tate's car. Tate told Beckham that he owned the car, but he could not produce any documentation.[1] Later, one of the passengers also claimed that she owned the vehicle. After Beckham confirmed the outstanding warrants,[2] he arrested Tate and radioed dispatch.

Tate and Beckham waited about five minutes, still at the rear of the vehicle, and the passengers remained in the car. From his vantage point looking through the back window of Tate's car, Beckham could see the passengers. He saw the front-seat passenger moving around a lot, and although he could not exactly tell what she was doing, he never saw her reach in the direction of the air-conditioning and heating controls.

With the passengers' consent, Beckham searched their purses and did not find any contraband. Then he removed them from the vehicle. When two backup officers arrived, one took custody of Tate to transport him to jail, and the other, a female DPS trooper, searched the two female passengers. She found no contraband. Beckham impounded the vehicle and during an inventory search found a syringe loaded with a brown liquid substance that was later identified as .24 grams of methamphetamine. He found the syringe in "a compartment underneath the air conditioner, heater control."[3] He described the compartment as "directly to the right" of the driver's seat, and he testified that, although both Tate and the front-seat passenger could access the compartment, the back-seat passenger could not. Tate disagreed, testifying that the back-seat passenger could have reached the compartment if she leaned forward. He also conceded that he had previously been convicted of possessing illegal drugs, DWI, and "escape," but he noted that the passengers had also been charged with drug-related offenses.[4] He maintained that one of the passengers put the syringe in the compartment after Beckham instructed him to get out of the vehicle.

A jury found Tate guilty of the state-jail offense of possession of a controlled substance and sentenced him to two years' confinement. Tate appealed his conviction, and the court of appeals held that there

---

1. Beckham later found that the vehicle was registered in someone else's name. During his testimony, Tate explained that he had agreed to take over payments for the vehicle, but he had not completed any of the paperwork to transfer ownership of it into his name.

2. Two warrants were outstanding. One warrant was for theft by check, and the other was for failure to appear when he failed to answer the theft-by-check charge. Tate testified that he wrote a $71 hot check but that he did not know about the court setting that he missed.

3. During his testimony, Tate described the compartment as being halfway between the passenger and driver's seat underneath the radio. He also said that it was open (did not have a cover) and was easily accessible by the driver or passenger and that a back-seat passenger might have been able to access it.

4. Tate testified that he knew one of the passengers pled guilty to a drug charge because he "overheard her lawyer and the district attorney talking."

was insufficient evidence to prove that he intentionally or knowingly possessed the methamphetamine. *Tate v. State,* 463 S.W.3d 272, 273 (Tex.App.–Fort Worth 2015, pet. granted). The State Prosecuting Attorney's Office filed a petition for discretionary review in this Court, which we granted, asking whether

> the court of appeals ignore[d] multiple rules of sufficiency review and substitute[d] its judgment for the jury's when it held there was insufficient evidence connecting appellant to the contraband found in plain view in the center console of a car that he owned and was driving?

## APPLICABLE LAW

### 1. Possession of a Controlled Substance

Tate was charged with possessing methamphetamine in an aggregate amount of less than one gram including adulterants or dilutants. TEX. HEALTH & SAFETY CODE § 481.115(a) & (b). The only issue here is whether Tate intentionally or knowingly possessed the methamphetamine in the syringe. To prove the requisite intent to possess, the State had to show that Tate (1) exercised control, management, or care over the substance in question and (2) that he knew that the substance was contraband. *See id.* § 481.115(a); TEX. PENAL CODE § 1.07(a)(39) (defining possession as actual care, custody, control, or management).

### 2. Sufficiency of the Evidence

When determining whether there is sufficient evidence to support a criminal conviction, we consider the combined and cumulative force of all admitted evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although the State must prove that a defendant is guilty beyond a reasonable doubt, the State's burden does not require it to disprove every conceivable alternative to a defendant's guilt.[5] In a sufficiency inquiry, direct evidence and circumstantial evidence are equally probative. *Winfrey v. State,* 393 S.W.3d 763, 771 (Tex.Crim.App.2013).

The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses, and juries may draw multiple reasonable inferences from the facts so long as each is supported by the evidence presented at trial. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *see Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex.Crim. App.2007). The jury is not, however, allowed to draw conclusions based on speculation. *Hooper,* 214 S.W.3d at 16. Unlike a reasonable inference, speculation is insufficiently based on the evidence to support a finding beyond a reasonable doubt. *Id.* When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict. *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781.

### 3. "Affirmative Links"

A defendant's mere presence is insufficient to establish possession. *Oaks v. State,* 642 S.W.2d 174, 177 (Tex.Crim.App. 1982). When the contraband is not in the exclusive possession of the defendant, a fact finder may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if there are suffi-

---

**5.** *Brown v. State,* 911 S.W.2d 744, 747 (Tex. Crim.App.1995) ("[T]he language of our cases which suggests that a hypothesis of ignorance must be specifically excluded in drug cases is misleading. It is really only another way of saying that hypothetical ignorance can be disproven with satisfactory evidence of actual knowledge.").

cient independent facts and circumstances justifying such an inference.[6] *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App. 2005) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App.1981)). In *Evans*, we summarized a non-exclusive list of fourteen factors from the Fourteenth Court of Appeals that may indicate a link connecting the defendant to the knowing possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n. 12 (Tex.Crim.App.2006); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex.App.–Houston [14th Dist.] 2005, no pet.). Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781.

## COURT OF APPEALS

The court of appeals held that there was insufficient evidence to prove that Tate possessed the contraband in the car, and it rendered a judgment of acquittal. *Tate*, 463 S.W.3d at 273. According to that court, the only links between Tate and the syringe were that Tate "was the driver and self-purported owner of the vehicle" where the syringe was found and that the syringe was found in an area accessible by Tate and the front-seat passenger. *Id.* at 277. The court, however, rejected Tate's proximity to the methamphetamine as sufficient evidence of possession. First, it reasoned that there was insufficient evidence that the syringe was in the compartment when Tate was asked to exit the vehicle. *Id.* Second, while Tate and Beckham stood behind the vehicle for about five minutes waiting for backup, Beckham could not see exactly what the front-seat passenger was doing, although he saw her moving around a lot. *Id.*

Instead, the court analogized this case to *Roberson v. State*, 80 S.W.3d 730 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd), in which the evidence was held to be insufficient. According to the majority, the State in *Roberson* merely showed that the defendant was driving a vehicle containing narcotics. In this case, however,

> [a]lthough [the syringe] was found in plain view after [the passengers] exited the vehicle, looking at the evidence in the light most favorable to the verdict,

---

**6.** The affirmative-links analysis is not a distinct rule of legal sufficiency. Rather, it is a helpful guide to applying the *Jackson* legal-sufficiency standard of review in the context of circumstantial evidence cases. *Evans v. State*, 202 S.W.3d 158, 161 n. 9 (Tex.Crim. App.2006).

at least five minutes had elapsed before the women were removed from the vehicle, during which time they were moving around so much that Sergeant Beckham admitted he could not keep a proper eye on them and could not tell what they were doing.

*Tate*, 463 S.W.3d at 276.

Writing in dissent, Justice Walker would have held that there was sufficient evidence to prove that Tate possessed the methamphetamine and that this "is a straightforward possession case ...." *Id.* at 278 (Walker, J., dissenting). She concluded that the majority reached the wrong result because it incorrectly applied the *Jackson* standard by failing to view the evidence in the light most favorable to the conviction. *Id.* According to her, when the evidence is properly examined, the jury could have reasonably inferred that the syringe was in the compartment when Tate was stopped, but Beckham did not see it either because he was at the driver-side window for only a brief period of time or because the syringe was so small it could have "roll[ed] deep enough within the cubbyhole that it would not be visible to a person standing at the driver's-side window." *Id.* at 279. She also concluded that "[t]he jury could have reasonably inferred that the [passengers] would not carry a syringe with a needle on their person or in their pockets and that because the syringe was not found in the women's purses, it was in the cubbyhole all along." *Id.* at 280.

Finally, Justice Walker decided that the majority erred by focusing on the links not proven in this case, instead of links the State did prove, and that the majority's reliance on *Roberson* was misplaced because that case is distinguishable. According to her, in *Roberson*, the contraband was not easily accessible to the defendant-driver, and there was evidence that the

contraband exclusively belonged to the front-seat passenger. In this case, however, Tate was within arms reach of the drugs, and there was no evidence that the drugs belonged to the front- or rear-seat passengers. *Id.* at 281 n. 7 (citing *Roberson*, 80 S.W.3d at 741–42).

## ARGUMENTS

The State contends that, although the affirmative-links rule protects innocent bystanders from conviction based on only proximity to contraband, presence or proximity may satisfy the burden when combined with other evidence. According to the State, the court of appeals improperly applied the alternative-reasonable hypothesis construct when it stated that, at the time Tate exited the vehicle, there was no evidence confirming that the passengers did not have the syringe. Although it may be reasonable to believe Tate's innocent explanation that the syringe was put in the compartment after he exited the vehicle, the State argues, the court's function in a sufficiency review is to assay the record for evidence of guilt, not possible innocent explanations. It also asserts that Tate need not have exercised exclusive possession of the controlled substance and that joint possession is sufficient so long as there are enough links between Tate and the controlled substance to prove that he had constructive possession.

Next, the State asserts that the court of appeals reweighed or ignored evidence. For example, although Tate claimed that he owned the vehicle, the court used the term "self-purported owner" to describe Tate's relationship to the car. According to the State, the court's comment indicated that it gave this factor less weight because the police could not confirm that he was the owner at the time. The State argues, however, that in the light most favorable to the evidence of guilt, Tate is considered the owner of the vehicle because he

claimed to be, and that fact should be weighed against him in our analysis. Further, the State argues that the court did not recognize, or downplayed, six of the affirmative links we summarized in *Evans*: the contraband was (1) in plain view, (2) conveniently accessible by Tate, (3) in a place owned, possessed, or controlled by him, (4) in a car driven by him, (7) found with drug paraphernalia (i.e., a syringe), and (13) was located while the accused was present during the search. Instead, the court of appeals focused on evidence it would have liked to have seen. For example, it lamented that there was no evidence of fingerprints on the syringe and no evidence that the officer saw the syringe while Tate was in the vehicle. The State contends that it was the jury's role to weigh the evidence actually presented, and the court of appeals erred when it acted as a thirteenth juror when it reversed Tate's conviction.

Tate responds that the court of appeals reached the correct decision because the cumulative force of the evidence did not support a finding beyond a reasonable doubt that he intentionally or knowingly possessed the contraband. *Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781. He also argues that *Roberson* should control the outcome of this case. According to Tate, in both his case and *Roberson*, the contraband was found only after the driver had been removed but passengers were still in the vehicle.

**ANALYSIS**

*1. A rational jury could have reasonably inferred that the syringe was in the compartment the entire time*

■ The majority concluded that, because there was no evidence that the sy-

ringe was in the compartment at the time that Tate was removed from the vehicle, it is possible that the passengers, who were still in the car, had the syringe and put it in the cubby. *Tate*, 463 S.W.3d at 276 & n. 5 (citing *Robinson v. State*, 174 S.W.3d 320, 326 (Tex.App.–Houston [1st Dist.] 2005, pet. ref'd)). The dissent responded that, because Officer Beckham did not see the front-seat passenger move towards the open compartment and a search of the passengers' person and purses turned up no contraband, a jury could have reasonably inferred that syringe had been in the compartment the whole time.[7] *Id.* at 281 (Walker, J., dissenting).

The majority also took issue with Beckham's testimony that, while he could see the front-seat passenger and that she did not reach over to the compartment, he also testified that he could not tell exactly what the front-seat passenger was doing. *Id.* at 276 (majority opinion). Unlike the court of appeals, we do not find Beckham's testimony to be inherently contradictory. We understand him to mean that, although he could not see every individual movement the front-seat passenger made, he could generally see what she was doing and would have noticed if she reached between the two front seats and over the center console to the compartment.

Viewing the evidence in the light most favorable to the conviction, the jury believed Beckham's testimony that he could generally see what the front-seat passenger was doing, that he never saw her reach for the compartment, that the back-seat passenger could not reach it, and that the syringe was found by police in the cubby in

---

7. With respect to Justice Walker's conclusion that the jury could have reasonably inferred that "the [passengers] would not carry a syringe with a needle on their person or in their

pockets," we disagree. It is not reasonable to infer that no one would ever choose to carry a syringe with a needle on their person or in their pockets.

plain view. Based on that, the jury could have then reasonably inferred that the passengers did not put the syringe in the compartment, so it must have been in there the whole time.

### 2. Does ownership of the car carry any analytical value?

In addition, although the court appears to have rejected the idea that Tate owned the vehicle, or at least considered it of dubious analytical value, we disagree. When Tate's statement that he owned the car is viewed in the light most favorable to the verdict, he was the owner of the vehicle, and it would be reasonable to infer that the owner-driver would be aware of items in his vehicle in plain view.

### 3. Is this case like Roberson?

The majority of the court of appeals found this case to be similar to *Roberson*. *Id.* at 277 (citing *Roberson*, 80 S.W.3d at 730). Thus, once again we return to a comparison of *Roberson* to the present one. In that case, the defendant was driving a vehicle with two passengers, and after being pulled over, the police discovered drugs in the passenger-side floorboard near the door and on the roadway a few inches from the passenger-side door. *Roberson*, 80 S.W.3d at 733–34. There are some similarities between *Roberson* and this case: Tate was driving a car with two passengers; the driver was removed from the car while the passengers were allowed to remain inside the vehicle; drugs were found in the vehicle; and no one claimed them. However, there are also some significant differences which distinguish this case from *Roberson*. First, the two passengers in *Roberson* both had cash and drugs on them, but Roberson had neither, which made the passengers more likely suspects. Second, the drugs in *Roberson* were not found in a center-console area within reach of the driver, but on the passenger-side floorboard and just outside of the passenger door. Finally, unlike here, the appellant in *Roberson* did not claim ownership of the car.

### 4. Correct application of Jackson

██ After thoroughly examining the record, the opinion of the court of appeals, the arguments of the parties, and according the proper deference to the jury's verdict, we agree with Justice Walker that the court of appeals incorrectly applied the *Jackson* standard. The court of appeals analyzed each circumstance of guilt in isolation without considering the cumulative force of all of the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778–79 (Tex.Crim. App.2007). It also erroneously focused on Tate's innocent explanation that one of the other passengers framed him. *Ramsey v. State*, 473 S.W.3d 805, 808 n. 3 (Tex.Crim. App.2015) (explaining the reasonable-hypothesis construct and that it was rejected in 1991). In a legal-sufficiency review, the logical force of all of the admitted evidence must be considered in the light most favorable to the conviction, meaning that all reasonable inferences from the evidence must be resolved in favor of the jury's guilty verdict. *Thornton v. State*, 425 S.W.3d 289, 305 (Tex.Crim.App.2014).

When that standard is applied here, the evidence shows that the methamphetamine and drug paraphernalia were found in the vehicle Tate owned and was driving. The drugs and syringe were in plain view and conveniently accessible to Tate. In addition, the jury could have reasonably inferred that the passengers did not put the syringe in the compartment while Tate and Beckham were at the rear of the vehicle based on Beckham's testimony that the front-seat passenger never reached over to the compartment and that the back-seat passenger could not reach it. In short, a

rational jury could have found the evidence sufficient to sustain a finding beyond a reasonable doubt that Tate intentionally or knowingly possessed the methamphetamine in question.

### CONCLUSION

Having found sufficient evidence to uphold Tate's conviction, we reverse the judgment of the court of appeals entering an acquittal and affirm the judgment of the trial court.

JOHNSON, J., concurred.

MEYERS, J., dissented.