

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00683-CR

Ben Andre **BRIDGES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR11498
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  October 24, 2018

AFFIRMED

Ben Andre Bridges appeals his conviction for possession of a controlled substance with intent to deliver, asserting the trial court erred in denying his motion for directed verdict. We affirm the judgment of the trial court.

### BACKGROUND

Bridges was indicted for one count of possession of a controlled substance (synthetic marijuana) with intent to deliver and one count of simple possession. He pled not guilty and proceeded to a jury trial. The evidence at trial established Bridges possessed two packages—

"Juicy Pink 6X and Orange Jungle 6X." After the State rested its case, defense counsel orally requested that a directed verdict be granted based on the State's failure to prove that (1) Bridges had the intent to deliver the controlled substances, and (2) the substances in his possession were illegal substances. The trial court denied the motion for directed verdict. The jury found Bridges guilty of possession with intent to deliver. In accordance with the jury's verdict, the trial court sentenced Bridges to fifteen years' imprisonment.

## STANDARD OF REVIEW

A complaint about a trial court's failure to grant a motion for directed verdict is a challenge to the sufficiency of the evidence. *Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003). To determine whether the evidence is sufficient to support a conviction, we must examine all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Harris v. State*, 532 S.W.3d 524, 527 (Tex. App.—San Antonio 2017, no pet.). In a sufficiency review, direct and circumstantial evidence are equally probative. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Circumstantial evidence, even in the absence of direct evidence, may be sufficient to uphold a conviction as long as the cumulative force of the evidence is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809-10 (Tex. Crim. App. 2015).

Under this standard, we must defer to the jury's determinations as to credibility and weight because the jury is the sole judge of witness credibility and the weight to be afforded a witness's testimony. *Cary*, 507 S.W.3d at 766; *Huff v. State*, 467 S.W.3d 11, 19-20 (Tex. App.—San Antonio 2015, pet. ref'd). Additionally, we must assume the jury resolved any apparent inconsistencies in testimony in order to render its verdict, and we defer to its resolution of such

inconsistencies. *Cary*, 507 S.W.3d at 766. As fact finders, jurors can choose to believe some, all, or none of the testimony provided by any witness, and give different weight to different testimony if they choose. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Moreover, jurors may draw multiple reasonable inferences from the facts as long as the evidence supports each inference. *Tate*, 500 S.W.3d at 413.

***Intent***

The elements for possession of a controlled substance with intent to deliver are that the defendant: (1) possessed a controlled substance in the amount charged; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a); *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). "'Deliver' means to transfer, actually or constructively, to another a controlled substance . . . . The term includes offering to sell a controlled substance . . . ." *Id*. § 481.002(8). Intent to deliver may be established by circumstantial evidence, such as evidence of an accused's possession of the contraband. *See Garcia v. State*, 218 S.W.3d 756, 764 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Patterson v. State*, 138 S.W.3d 643, 649 (Tex. App.—Dallas 2004, no pet.) (stating that "intent to deliver" can be proved by circumstantial evidence, such as the quantity of the drugs possessed, the manner of packaging, and the presence of the accused on the premises). Testimony by experienced law enforcement officers may also be used to establish a defendant's intent to deliver. *Jones v. State*, 300 S.W.3d 93, 97 (Tex. App.—Texarkana 2009, no pet.); *Garcia*, 218 S.W.3d at 764. A reviewing court may also consider several factors in determining intent to deliver, including the nature of the location where the defendant was arrested, the quantity of drugs the defendant possessed, the manner of packaging the drugs, the presence or absence of drug paraphernalia (for use or sale), whether the defendant possessed a large amount of cash in addition to the drugs, and the defendant's status as a drug user.

*Jones*, 300 S.W.3d at 97; *Garcia*, 218 S.W.3d at 764. "The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Moreno v. State*, 195 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (op. on reh'g). Furthermore, "intent to deliver is a question of fact for the jury to resolve, and it may be inferred from the acts, words, or conduct of the accused." *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

Officer Christopher Dech, a downtown bicycle patrol officer for the San Antonio Police Department, testified that he has received specialized training in identifying synthetic marijuana. He noted that the drug is packaged in a very specific way. Tobacco is removed from a cigarillo and replaced with synthetic narcotic and rolled. He stated that synthetic marijuana is prevalent in certain parts of the downtown area and that he sees it virtually every day. Cigarillos containing synthetic marijuana are sold for $1-$5 and typically contain one-tenth of 1 gram of synthetic marijuana. Dech stated that in his experience, vagrants and the homeless often consume the synthetic marijuana. Dech stated that the side effects from use of the drug vary from a "zombie like state" to violence.

On the date Bridges was arrested, Dech observed Bridges and three other individuals at a bus stop from a nearby parking garage. Bridges was with two other males and a female. Dech recognized one of the males and the female because he had dealt with them many times before on downtown patrol, and they were known to Dech to be users of synthetic marijuana. Dech observed the female in a "passed-out state" and the two other males keeping "lookout," which Dech said meant they were looking for police. Dech observed Bridges take out a package and move his fingers in a manner that is consistent with removing the tobacco from a cigarillo. Dech saw Bridges throw away a cigarillo package. He then saw Bridges pull something from his left front

pocket and put it in the cigarillo. Dech then saw Bridges move his hands in a motion consistent with rolling a joint.

Dech moved from the parking garage to the bus stop where Bridges and the female were located; the two other men had left. Dech saw something coming out of Bridge's left front pocket and noted that it was consistent with the colorful packaging of synthetic cannabinoid. Dech asked Bridges to give him the package; it was labeled "6X Pink Juicy." Dech recognized the "fruity pungent odor" as cannabinoid and placed Bridges under arrest for possession of a controlled substance in Penalty Group 2A. After placing Bridges under arrest, Dech searched Bridges's person and found a package labeled "Orange Juice 6X" in his rear left pocket. Dech opened that package and believed it to contain a synthetic cannabinoid substance. Dech observed loose tobacco on the ground at the scene. The joint Dech observed Bridges rolling was not recovered, leading Dech to conclude that Bridges sold the joint to one of the other two men who left the bus stop.

Dech was wearing a body camera at the time of the arrest and a recording of the arrest was played for the jury. On the video, the female admits to Dech that she had synthetic marijuana. The female was slow in her responses and had slurred speech which can be indicative of synthetic marijuana use. Bridges was also somewhat slow and lethargic, with slightly slurred speech, but Dech could not say for sure whether he was under the influence of synthetic cannabinoid.

Bridges was initially charged with simple possession, but once Dech reviewed the evidence, a charge of possession with intent to deliver was added because Bridges had over 150 times the amount of synthetic marijuana on him as an individual would need for single use. In addition, $77 was found in Bridges's wallet: one $20 bill, three $10 bills, and twenty-one $1 bills. Dech considered the large amount of $1 bills to be indicative of distributing narcotics on the street, especially to homeless people.

Our reading of the record reflects that there was sufficient circumstantial evidence to establish that Bridges intended to deliver synthetic marijuana to others. Officer Dech was trained in spotting synthetic marijuana and was familiar with how it was packaged and sold. Dech testified that the amount of synthetic marijuana found on Bridges was inconsistent with personal use. Dech also noted that the large amount of single bills found in Bridges's wallet was indicative of selling the drug for $1-$5 to homeless people, who usually carry small bills collected from panhandling. In addition, the joint that Dech observed Bridges rolling was not recovered at the scene, indicating it was delivered to one of the males who had been at the bus stop with Bridges. Viewing the evidence in the light most favorable to the verdict, and based on the logical force of all the circumstantial and direct evidence, a rational factfinder could find beyond a reasonable doubt that Bridges intended to deliver the synthetic marijuana in his possession to others. *See Cary*, 507 S.W.3d at 766.

### *Chemical Composition of the Alleged Narcotics*

Bridges next complains the trial court erred in denying his motion for directed verdict because the State failed to prove the substances in Bridges's possession were illegal substances. Again, we must review the sufficiency of the evidence. *See Canales*, 98 S.W.3d at 693.

The first count of the indictment provided as follows:

On or about the 21st Day of September, 2016, BEN BRIDGES did knowingly possess, with intent to deliver, a controlled substance, namely: 5-flouro ADB and MMB-FUBINACA, which by aggregate weight, including any adulterants and dilutants was of an amount of FOUR (4) grams or more but less than Four Hundred (400) grams…

The charge informed the jurors:

Tetrahydrocannabinols, other than marijuana, and synthetic equivalents of the substances contained in the plant, or in the resinous extractives of cannabis, or synthetic substances, derivatives, and their isomers with similar chemical structure

and pharmacological activity, such as 5-flouro ADB and MMB-FUBINACA, are controlled substances.

The application paragraph of the charge tracked the language of the indictment.

Yvette Pirkle, a chemist with the Bexar County Criminal Investigation Laboratory, tested the substances seized from Bridges. She testified that both packages—the "Juicy Pink 6X and Orange Jungle 6X"—were positive for "5-flouro ADB, MMB-FUBINACA," the chemical compound alleged in the indictment. Pirkle testified this was also known as synthetic marijuana. She stated that to make synthetic marijuana, three components must be present: a core, a link, and a Group A. She specified that in the substances she tested in this case, the core for 5-fluoro is imidazole, the link is carboxamide, and Group A is methyl methoxy oxobutane. She further testified that the substances found on Bridges tested positive for the chemical named in the indictment. The Pink packet contained 4.089 grams and the Orange packet contained 3.160 grams. Their total weight was more than seven grams.

Bridges was charged with possession of a controlled substance in Penalty Group 2-A. TEX. HEALTH & SAFETY CODE ANN. §§ 481.1161; 481.1031(b)(3); *see also Lerma v. State*, 543 S.W.3d 184, 197, n.109 (Tex. Crim. App. 2018) ("Synthetic marijuana is a Penalty Group 2–A substance."). After the State rested, Bridges moved for a directed verdict, arguing the State had only proved "the core component substance and has failed to prove the exact specific nature as set forth in the indictment, the link component or the Group A component." Section 481.1031 of the Texas Health and Safety Code defines "core components," "Group A components," and "link components." TEX. HEALTH & SAFETY CODE ANN. § 481.1031(a). Pirkle testified that one substance from each of the section 481.1031 categories was present in the "5-flouro" for which the substances found on Bridges tested positive. Thus, the evidence at trial showed that the same chemical compound found in the substances seized from Bridges was also included in the

indictment and the charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (holding sufficiency of evidence to support conviction should be measured against elements of offense as defined by a "hypothetically correct jury charge"). We therefore conclude the evidence was sufficient to prove beyond a reasonable doubt that Bridges possessed a controlled substance.

## CONCLUSION

Because there was sufficient evidence to support the challenged elements of the offense of possession of a controlled substance with intent to deliver, we hold the trial court did not err in overruling Bridges's motion for directed verdict. We overrule Bridges's sole issue on appeal, and affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

Do Not Publish