

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00093-CR

Ryan **RODRIGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CR11801
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Irene Rios, Justice

Delivered and Filed: December 12, 2018

AFFIRMED

Ryan Rodriguez was convicted by a jury of criminally negligent homicide. On appeal, Rodriguez challenges the sufficiency of the evidence to support the jury's verdict. We affirm the trial court's judgment.

### BACKGROUND

The evidence is undisputed that Rodriguez fatally shot Melody Cerros. Rodriguez was indicted for manslaughter. The jury found Rodriguez guilty of the lesser included offense of criminally negligent homicide. Rodriguez appeals.

**STANDARD OF REVIEW**

When reviewing the sufficiency of the evidence, we consider all the evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses, and juries may draw multiple reasonable inferences from the facts so long as each is supported by the evidence presented at trial." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that resolution. *Jackson*, 443 U.S. at 326; *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018).

**APPLICABLE LAW FOR ESTABLISHING CRIMINAL NEGLIGENCE**

A person commits criminally negligent homicide if he causes the death of another by criminal negligence. TEX. PENAL CODE ANN. § 19.05(a). "A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id*. § 6.03(d). "The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances, as viewed from the actor's standpoint." *Id*. As the Texas Court of Criminal Appeals has recently explained:

> A legally sufficient showing of criminally negligent homicide requires the State to prove that (1) the defendant's conduct caused the death of an individual; (2) the defendant ought to have been aware that there was a substantial and unjustifiable risk of death from his conduct; and (3) his failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised

under like circumstances. The circumstances are viewed from the standpoint of the actor at the time that the allegedly negligent act occurred. Criminal negligence does not require proof of a defendant's subjective awareness of the risk of harm, but rather the defendant's awareness of the attendant circumstances leading to such a risk. The key to criminal negligence is not the actor's being aware of a substantial risk and disregarding it, but rather it is the failure of the actor to perceive the risk at all.

*Queeman*, 520 S.W.3d at 622-23 (internal quotation omitted).

### ANALYSIS

In his brief, Rodriguez argues the evidence is insufficient to support the jury's verdict because Adolph Isaac Cantu, the owner of the gun, told Rodriguez the gun was not loaded. The State responds Rodriguez acted with criminal negligence in pointing the gun directly at Cerros's head, racking the gun, and pulling the trigger.

In his recorded statement, Rodriguez admitted he heard the gun being fired by another person earlier that evening, but when he was handling the gun later that evening, Cantu told him the gun was not loaded and no magazine or clip was in the gun. Jacob Arocha, who was present when Cerros was shot, testified he observed Rodriguez and Cantu "playing with the gun," "cocking it back and looking to see if there was bullets in it, and looking at the chambers and everything." Jacob specifically testified Cantu and Rodriguez "took out the whole clip" and "were looking at the clip as well." Jacob further testified, "They were just looking at it, pulling out the clip, looking at the bullets because they just thought it was fun or something." Jacob then saw Rodriguez point the gun straight at Cerros's head and heard the shot fired.

Cantu admitted he told Rodriguez the gun was unloaded; however, his definition of unloaded was that a round was not in the chamber of the gun. Cantu did not consider a gun to be loaded if a clip or magazine containing bullets was in the gun but a round was not in the chamber of the gun. Cantu testified after he told Rodriguez the gun was not loaded, Rodriguez "cocked the gun, and then he pointed by her head and he pulled the trigger." Cantu stated Rodriguez loaded a

bullet into the chamber of the gun when he cocked the gun or racked the slide of the gun. In his recorded statement, Rodriguez admitted he racked the slide of the gun.

In response to whether he had ever seen Rodriguez point a gun at anyone else, Cantu testified he previously saw Rodriguez point a gun at his sister. Cantu further testified he told Rodriguez not to "be pointing the gun at people like that." Cantu also testified a few seconds passed between the time he handed Rodriguez the gun and when Rodriguez "pointed the gun at her and loaded it" and the gun discharged.

In his recorded statement, Rodriguez admitted he previously had handled a gun. Nicholas Arocha, Jacob's brother who was not present the night of the shooting, testified he saw Rodriguez with a firearm on three prior occasions. On those occasions, Nicholas saw Rodriguez point the gun at people's heads and backs and pull the trigger. In response, Nicholas instructed Rodriguez on gun safety, told him that was dangerous to do, and also told him a gun is "not a toy to be playing with."

Detective Lawrence Saiz, who interviewed Rodriguez and took his statement, testified he believed Rodriguez had a working knowledge of the gun since he could describe how to rack the slide but denied squeezing the trigger. Detective Saiz also believed Rodriguez recklessly discharged the firearm, stating even if Rodriguez thought the gun was unloaded, racking the gun, pointing it towards a person, and pulling the trigger is reckless. Finally, Detective Saiz believed Rodriguez was aware of the risk because: (1) he asked if the gun was unloaded; (2) he knew about operating the gun by racking the slide; and (3) when asked what he knew about gun safety, he stated never have your finger on the trigger.

Detective Rachel Barnes, the lead detective in the investigation, also testified it is "reckless to point a firearm at somebody and pull the trigger regardless of what you think the capability of that gun at that moment. And he pointed the gun at this girl's head from behind." In response to

whether a substantial risk exists with an unloaded gun, Detective Barnes responded, "You have a substantial risk any time that you do have a firearm and you point it. It is a deadly weapon. So without you actually checking the firearm yourself, it's always a substantial risk."

It is undisputed that Rodriguez's conduct caused Cerros's death. Because Rodriguez was previously warned of the danger of pointing a gun at someone and pulling the trigger, he was aware "of the attendant circumstances leading to [the] risk" of death by racking a gun, pointing it at Cerros's head, and pulling the trigger. *Queeman*, 520 S.W.3d at 633. Therefore, we hold the evidence is legally sufficient to support a finding that: (1) Rodriguez "ought to have been aware that there was a substantial and unjustifiable risk of death from his conduct;" and (2) "his failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances." *Id*. at 622. Accordingly, the evidence is legally sufficient to support the jury's verdict.

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH