

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00310-CR

———————————————

AARON JOHNSON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1517074D

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

On October 14, 2017, at 8:15 p.m., Fort Worth Police Officer Daniel Pritzker was patrolling a high crime area known for narcotics and violence when he spotted an occupied vehicle parked in front of a dilapidated one-story building on which "NO STANDING," "NO PARKING," and "NO LOITERING" were stenciled in paint in large letters. The building also had a large "No Trespassing" sign affixed to its front. A man, identified at trial as Appellant Aaron Johnson, sat in the vehicle's driver's seat and smoked a cigarette. The windows were down and the car's interior lights and radio were on.

As Officer Pritzker approached the vehicle, he noticed a strong odor of marijuana. Johnson told the officer that he was waiting for someone. When Officer Pritzker informed Johnson that he had probable cause to search the vehicle, Johnson demanded to speak to a supervisor. Officer Pritzker's supervisor, as well as other police officers, came to the scene, and after the supervisor explained to Johnson that they had probable cause to search the vehicle, police found crack cocaine, marijuana, and Xanax, as well as a digital scale, in the vehicle's glove compartment.[1] They also found a purse in the back seat, on the driver's side, that contained plastic baggies of the kind used for packaging narcotics. The purse belonged to Aleisha Jones, one of Johnson's relatives, who later arrived at the scene and became agitated when the

---

[1]A forensic scientist testified that 1.032 grams of cocaine, 1.507 grams of Alprazolam (Xanax), and 27.023 grams of marijuana were recovered from the vehicle.

police searched the car without her permission. (Johnson referred to the car as "his" while he talked with police, but the car actually belonged to Jones.)

The trial court admitted into evidence body-camera footage from many of the officers who were on the scene and allowed it to be published to the jury. Among other things, the footage showed Johnson's removal from the vehicle and his pat-down before being placed in Officer Pritzker's patrol car.

After Officer Pritzker ran a search on Johnson's name and date of birth, he discovered an outstanding warrant. Johnson did not believe that he had an outstanding warrant until, on the way to jail, Officer Pritzker showed him the outstanding warrant on the patrol vehicle's computer. Johnson then responded "Oh, my bad." At one point on the way to the jail, Johnson lamented, "I knew I shouldn't have smoked that shit" and mused that he should have waited until he "got into the club." He boasted twice during the 17-minute trip that he would be "out in two days." And he sang a bit. Officer Pritzker also observed that Johnson was sweating profusely. Officer Pritzker believed that Johnson was under the influence of drugs.

A jury found Johnson guilty of possession of a controlled substance (cocaine) of one gram or more but less than four grams and assessed his punishment at 20 years' confinement and a $5,000 fine.[2] *See* Tex. Health & Safety Code Ann.

---

[2]Johnson pleaded true, and the jury found true, the indictment's repeat offender notice on Johnson's 2013 murder conviction, which enhanced the possession offense's punishment range from that of a third-degree felony to that of a

§ 481.115(a), (c); Tex. Penal Code Ann. §§ 12.33–.34, .42(a). The trial court entered judgment on the jury's verdict and sentenced him accordingly.

In a single point, Johnson complains that the evidence is insufficient to support his conviction, arguing that there is no evidence that he possessed the cocaine when it was found in the glove box of a vehicle that did not belong to him and the plastic baggies were found in a purse belonging to the vehicle's owner, who had been at a nearby club. Johnson concedes that the police had a right to search the vehicle but points out that the drugs were not found on his person and that no one testified that he had tried to conceal anything. *See* Tex. Health & Safety Code Ann. § 481.002(38) (defining "possession" as "actual care, custody, control, or management"); Tex. Penal Code Ann. § 1.07(a)(39) (same).

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the

---

second-degree felony. *See* Tex. Health & Safety Code Ann. §§ 481.102(3)(D), .115(c); Tex. Penal Code Ann. §§ 12.33–.34, .42(a).

evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622.

While a defendant's mere presence near contraband is insufficient to establish his possession of it, a factfinder may infer that the defendant intentionally or knowingly possessed it if there are sufficient independent facts and circumstances justifying such an inference, even if the contraband was not in the defendant's exclusive possession. *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016); *see* Tex. Penal Code Ann. § 6.03(a) ("A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.").

The court of criminal appeals has set out a nonexclusive list of factors that may indicate a link connecting the defendant to the knowing possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was

5

enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate*, 500 S.W.3d at 414. Although these factors can help guide our analysis, the inquiry ultimately remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt? *Id.* (citing *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2788–89); *see Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) ("These are simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession.' They are not a litmus test."); s*ee also Harris v. State*, 173 S.W.3d 575, 580 (Tex. App.—Fort Worth 2005, no pet.) ("It is not the number of affirmative links present that is important, but rather the 'logical force' that they create to prove that the defendant committed the crime.").

The State asserts that it established sufficient affirmative links between Johnson and the cocaine.

We agree. The evidence reflected Johnson's presence when the search was conducted; Johnson's proximity to and the accessibility of the cocaine, which was in the vehicle's glove box; the presence of other narcotics in the vehicle; the odor of marijuana, which triggered probable cause for the vehicle search; and the presence of drug paraphernalia in the form of the digital scales, which Officer Pritzker testified were typically used to weigh narcotics, and which were found in the glove

6

compartment with all of the drugs. The evidence also reflected that Johnson admitted having used drugs that evening and appeared to be under the influence of narcotics when he was arrested. Since no drugs were found on his person during his pat-down, the jury could have inferred that he had used some of the drugs that were in the vehicle. Johnson also had at least an apparent right to possess the place where the drugs were found because he was in the driver's seat of the vehicle, referred to the vehicle as "his," and was the only person in the vehicle when Officer Pritzker arrived on the scene.[3]

Accordingly, based on the combined and cumulative force of all of this evidence and any reasonable inferences therefrom, the jury was rationally justified in finding Johnson's guilt beyond a reasonable doubt of possession of a controlled substance (cocaine) of one gram or more but less than four grams. *See Tate*, 500 S.W.3d at 414. We overrule Johnson's sole point and affirm the trial court's judgment.

> /s/ Bonnie Sudderth
> Bonnie Sudderth
> Chief Justice

---

[3]While Jones actually owned the vehicle and the purse found therein that held plastic baggies, and while she appeared at least equally vexed at its search by police when she arrived on the scene, the fact that she might also have had "actual care, custody, control, or management" of the drugs in the car did not preclude Johnson's possession of them. *See Harris*, 173 S.W.3d at 579 ("It is well established that drug possession need not be exclusive, and that an individual can possess drugs jointly with others.").

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 26, 2019