# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-18-00298-CR
_____

### PATRICK THOMAS VAUGHN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D170191-R**

## MEMORANDUM OPINION

Patrick Thomas Vaughn appeals his conviction for possession of a controlled substance, specifically methamphetamine, in an amount greater than one gram but less than four grams, a third-degree felony. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), 481.115(a), (c). A jury convicted Vaughn of the offense, and after a plea of "true" to enhancements for prior felony convictions, the jury sentenced him to thirty years of confinement in the Institutional Division of the Texas Department of

1

Criminal Justice. *See* Tex. Penal Code Ann. § 12.42(d). In one issue, Vaughn contends the evidence is insufficient to support his conviction. We affirm the trial court's judgment.

## Background

The testimony at trial established that Bridge City Police Officers D.H. and R.B. responded to a residence, described as a "small travel trailer," to investigate a report of a stolen vehicle made by the resident, Laura Huggins. Officer R.B testified that upon arrival, they knocked on the door of the trailer and overheard a man, later determined to be Vaughn, tell someone to open the door. Shortly thereafter, Huggins opened the door and invited the officers into the trailer. Prior to entering, the officers testified that they observed Vaughn sitting next to a table in the trailer "completely nude." Officer R.B testified that he instructed Vaughn to get dressed while he spoke with Huggins.

Officer R.B. testified that once inside the trailer, Officer D.H. walked over to the table to focus his attention on Vaughn and observed a substance that looked like methamphetamine. Officer D. H. testified that he observed methamphetamine on the table next to Vaughn, with a spoon containing methamphetamine residue and a used syringe on the floor near Vaughn's feet. Officer D.H. said there were a couple of additional syringes on the table, and the trial court admitted a photograph of the

2

syringes at trial. Officer R.B. likewise testified that he observed Vaughn sitting next to the table and methamphetamine outside of a baggy on the table next to him. The trial court admitted photographs of the table showing where Vaughn would have been sitting. Officer D.H. explained the significance of the items they observed and that the presence of the spoon and syringes indicated that Vaughn and Huggins were "shooting the meth." The officers testified that after observing the methamphetamine, they immediately took Huggins and Vaughn into custody, and Officer D.H. collected the substance. The officers testified that they field tested the substance, which tested positive for methamphetamine.

Once the officers secured the suspects, Officer R.B. conducted a secondary search around the table and located a silver container with a lid on it. Officer R.B. testified that he discovered a baggy that said "stay high" which contained most of the methamphetamine. Officer D.H.'s testimony corroborated this. During trial, the trial court admitted photographs of the baggy and container.

The officers asked who the narcotics belonged to, but Vaughn and Huggins both denied it belonged to them. Officer D.H. explained that because the travel trailer was very small, this meant everything was in one room and Vaughn and Huggins would have walked right in front of the table and the syringe on the floor, so both had knowledge and, therefore, both were arrested. Officer R.B. said that Vaughn

3

sitting in the house nude indicated he resided there, was very comfortable there, and had been there a while. Both officers explained that they based the decision to arrest Huggins and Vaughn on the totality of the circumstances, not solely because of their presence at the scene. Officer R.B. explained that the syringes and the spoon evidence drug usage in that location, and the totality of the circumstances indicated possession.

When they arrived at the police station, Vaughn provided a written statement, which the trial court admitted into evidence. Officer R.B. read a portion of it to the jury:

> Today, on Thursday, November 17, 2016, [Officers R.B. and D.H.] came to the house to talk with both me and [Huggins] about the truck. When they came inside the house, [D.H.] found some meth that was laying on the table in front of where I was sitting. I had just sat down when they arrived. Both [Huggins] and I use meth, but I did not know the meth was inside the house. It had been two days since [Huggins] and I used meth, and I thought it was all gone.

A forensic scientist from the Jefferson County Crime Lab testified that her initial tests showed the substances recovered from the scene consisted of meth-amphetamine, which was confirmed by further testing using a gas chromatograph mass spectrometer. The scientist testified that the substances weighed .453 grams and .695 grams, for a total weight of 1.148 grams. The trial court admitted a copy of her report reflecting these findings as evidence.

4

Laura Huggins testified for the defense. Huggins testified that she ultimately pled guilty to this possession charge and was incarcerated at the time of trial. Huggins told the jury that Vaughn's statement about using all of the methamphetamine two days before was true and that she and Vaughn injected methamphetamine two days before officers came to the trailer. Because they had used all the methamphetamine, Huggins testified she bought more and put the drugs on the table while Vaughn slept. As far as she knew, he never touched or moved them, and he did not know anything about that methamphetamine. However, Huggins confirmed that before she answered the door, she was sitting at the table with Vaughn and was preparing to use the methamphetamine, which Vaughn observed. Huggins admitted that Vaughn knew the methamphetamine was on the table, and he had access to it. Huggins testified that they would share drugs and confirmed they would watch each other shoot up. Huggins also testified that she lied to police when she denied she owned the drugs.

## Standard of Review

Upon a claim of legal insufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010) (citing

5

*Jackson v. Virginia*, 443 U.S. 307 (1979)) (concluding the *Jackson* standard "is the only standard that a reviewing court should apply" when examining the sufficiency of the evidence); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In a legal sufficiency review, we examine all evidence in the record, direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The jury is the sole judge of the witnesses' credibility and weight given to their testimony, and we defer to the jury on those matters. *See Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Juries may draw multiple reasonable inferences so long as each inference is supported by the evidence presented at trial. *Id.* The jury may choose to disbelieve some testimony and believe other testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

**Analysis**

To establish its case for possession of a controlled substance, the State must prove Vaughn exercised care, control, or management over the methamphetamine and knew the substance was methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.115(a), (c); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 n.32 (Tex. Crim. App. 2015). The evidence must show the defendant's connection with

6

the drug was more than just fortuitous, which is the "affirmative links" rule. *Poindexter*, 153 S.W.3d at 405–06; *Nixon v. State*, 928 S.W.2d 212, 215 (Tex. App.—Beaumont 1996, no pet.). If a defendant does not have exclusive possession of the place where the controlled substance is discovered, additional facts beyond mere presence must link him to the illegal substance. *Tate*, 500 S.W.3d at 413–14. The State is not required to prove exclusive possession of the contraband as control may be jointly exercised by more than one person. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).

The factors courts consider when determining the establishment of affirmative links are:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *Tate*, 500 S.W.3d at 414. "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans,* 202 S.W.3d at 162.

Examining the "affirmative links" factors, Vaughn was in the small travel trailer when the officers searched it. Some of the methamphetamine was found on the table in plain view immediately next to where Vaughn was sitting, which prompted officers to conduct a further search of the immediate area. In addition to the methamphetamine, the officers located other paraphernalia including a spoon with drug residue and syringes. Moreover, Vaughn made a statement to police admitting to recently using methamphetamine with Huggins. Huggins also admitted she lied to police. The jury could have disbelieved all or a portion of her testimony. *See Lancon*, 253 S.W.3d at 707. Despite Huggins's claims of ownership, her testimony confirmed that they shared drugs, they watched each other inject it, Vaughn knew the drugs were there, and he had access to them. The logical force of the evidence establishes an affirmative link between Vaughn and the methamphetamine. *See Evans*, 202 S.W.3d at 162. The State is not required to establish Vaughn had exclusive possession of the methamphetamine. *See McGoldrick*, 682 S.W.2d at 578.

When viewing the evidence in the light most favorable to the jury's verdict, we determine the evidence is legally sufficient for a rational fact finder to conclude beyond a reasonable doubt that Vaughn knowingly possessed methamphetamine. *See* Tex. Health & Safety Code Ann. §§ 481.102(6); 481.115(a), (c); *Brooks*, 323 S.W.3d at 912. We overrule his sole issue.

## Conclusion

We conclude the evidence was legally sufficient to support the jury's verdict convicting Vaughn of possession of a controlled substance. We affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on November 4, 2019
Opinion Delivered November 13, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

9