

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00195-CR
_____

JERRY JERMAINE MILLS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 22F1018-202

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

A Bowie County jury convicted Jerry Jermaine Mills of the third-degree felony of cruelty to a non-livestock animal. The trial court rendered judgment according to the verdict, fining Mills $1,000.00 and sentencing him to three years in prison. The offense of cruelty to non-livestock animals is committed when a "person intentionally, knowingly, or recklessly . . . tortures an animal or in a cruel manner kills or causes serious bodily injury to an animal," with torture being defined as "any act that causes unjustifiable pain or suffering." TEX. PENAL CODE ANN. § 42.092 (Supp.).

On appeal, Mills contends that the trial court "should have granted a motion for directed verdict as [to] each and every element of the offense." More specifically, Mills contends that the State "failed to present any evidence as to the dog experiencing pain" and, further, failed to prove that Mills's actions were "unjustified."

We affirm the trial court's judgment.

## I.     The Trial Record

The record contains testimonial and video recorded evidence of Mills throwing his dog off a second-floor motel balcony onto the paved parking lot below, then coming down the stairs, yanking the dazed dog into the air to the height of Mills's shoulder by a leash coiled around the animal's neck, spinning the flailing animal as the leash unraveled, slamming the dog back onto the pavement, then once again yanking the dog into the air and slamming it to the ground, and then kicking the dog in the face. The recording is from the security camera of a neighbor who lives next to the motel. The neighbor did not see the dog being thrown from the balcony. She

2

was inside her house when she heard the yelp of a dog in distress, so she looked outside, saw the stunned dog, and saw the events thereafter with her own eyes. She recognized both Mills and the dog, because in days before, she had seen Mills and the dog in the motel parking lot. At trial, she identified Mills as the man she saw and the man shown on the recording. The neighbor is a dog owner herself. She testified that, from the sounds she heard and from what she saw, Mills's dog was in pain.

After the State's case-in-chief, Mills moved for an instructed verdict, stating, "The defense moves for a directed verdict based on the insufficiency of identifying him as the perpetrator of the crime that's depicted on the videos and that it's insufficient to prove beyond a reasonable doubt that it's him or it's his dog that's involved in those things." The trial court denied the motion.

Mills testified in his own defense. He denied being the man shown in the recording. He denied that the dog shown in the recording was his. He denied having a dog at that time.

Before trial, while in jail, Mills made a telephone call to a then-girlfriend. The telephone call was introduced into evidence during Mills's cross-examination. Early during the telephone call, Mills stated that he was calling from jail, and his then-girlfriend asked, "What happened?" Mills responded, "They gonna Michael Vick me in real life girl." His then-girlfriend followed by asking, "How? With what?" Mills responded, "My damn dog . . . My damn dog. I got an animal cruelty charge." His then-girlfriend inquired further, "The dog that died, or the dog that you have with you?" Mills responded, "Nah, the dog that I, uh, another dog in Mississippi." Mills then shifted the call to other topics. His then-girlfriend returned to the original topic of the

3

call, "So . . . what did they arrest you for?  I know animal cruelty, but who . . . How did it happen?"  Mills responded:  "Like, uhm, I kicked the dog, right, and I guess someone recorded me kicking the dog."  After the recording of the telephone call was played for the jury, Mills testified that this was not an admission that he had kicked a dog but, instead, was his attempt to explain the charges to his then-girlfriend.

After the close of evidence, Mills re-urged his motion, stating, "The defense moves for a directed verdict based on the insufficiency of the evidence proved beyond a reasonable doubt that Jerry Mills is the individual depicted in the videos, that the evidence is unreliable, and that it's entirely insufficient to convict him."  The trial court denied the renewed motion.

## II.      Standard of Review

"We treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence."  *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Horne v. State*, 228 S.W.3d 442, 445 (Tex. App.—Texarkana 2007, no pet.).  "In reviewing the sufficiency of the evidence, we consider all the evidence, both State and defense, in the light most favorable to the verdict."  *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990); *see Smith v. State*, 109 S.W.3d 80, 81 (Tex. App.—Texarkana 2003, no pet.) ("[O]ur review of the sufficiency of the evidence is not limited to the evidence presented before an appellant's motion for instructed verdict is made at the end of the State's case-in-chief.").  "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses, and juries may draw multiple reasonable inferences from the facts so long as each is supported by the evidence presented at trial."  *Tate v. State*, 500 S.W.3d 410,

413 (Tex. Crim. App. 2016). "[W]e must keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021).

### III. Analysis and Disposition

During trial, Mills initially sought an instructed verdict (and acquittal from the jury) on grounds that the evidence was not sufficient to identify him as the man shown on the recording. On appeal, Mills asserts that an instructed verdict should have been granted because the State did not prove any element of the offense. Mills's appellate argument, though, does not focus on identity. Mills focuses his appellate argument on whether the animal suffered serious injury or suffered unjustifiable pain.

We find that the record amply supports a finding that Mills, with the requisite mens rea, inflicted "unjustifiable pain or suffering" on his dog, which meets the definition of "torture" under Section 42.092(a)(8) of the Texas Penal Code. TEX. PENAL CODE ANN. § 42.092(a)(8). The statute permits a conviction on grounds of torture alone. *See* TEX. PENAL CODE ANN. § 42.092(b)(1) ("tortures an animal *or* in a cruel manner kills or causes serious bodily injury to an animal") (emphasis added). We, therefore, need not address Mills's complaint regarding serious bodily injury.

Regarding identity, the jury was free to believe the testimony of the neighbor that Mills is the man she saw and is the man shown on her security-camera footage. The jury was also free to disbelieve Mills's testimony about the purported meaning of his jailhouse call and to, instead,

5

take Mills's words in that call at face value: "I kicked the dog, right, and I guess someone recorded me kicking the dog."

We affirm the trial court's judgment.


                                    Jeff Rambin
                                    Justice

Date Submitted:        April 4, 2024
Date Decided:          July 2, 2024

Do Not Publish