**Opinion filed February 21, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00053-CR

_____

## DAVID WESLEY KELSEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**

**Mitchell County, Texas**

**Trial Court Cause No. 7627**

### M E M O R A N D U M   O P I N I O N

The jury convicted David Wesley Kelsey of possession of a controlled substance, namely methamphetamine, in an amount less than one gram. Appellant elected for the trial court to assess punishment. The trial court assessed Appellant's punishment at confinement for two years and a $4,000 fine, but it suspended the imposition of the sentence and placed Appellant on community supervision for four years. In a single issue on appeal, Appellant argues that the evidence was

insufficient to show that he intentionally or knowingly possessed a controlled substance. Specifically, Appellant contends that the evidence is insufficient to affirmatively link him to the methamphetamine that was found in the vehicle that Appellant had borrowed. We affirm.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When we conduct a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of an appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

On the day of the alleged offense, Texas Department of Public Safety Trooper Ricardo Molina was on patrol on Interstate 20 when he noticed a vehicle parked on a road off Interstate 20; there were no other vehicles that were parked there. Trooper Molina decided to check to see whether anyone in the vehicle needed help.

As Trooper Molina drove toward the vehicle, he noticed that the windows of the vehicle were covered with newspapers and paper towels. As Trooper Molina turned onto the road where the vehicle was located, Appellant immediately exited the driver's side door, opened the hood, and began to look at the engine.

Trooper Molina parked directly in front of the vehicle so that he could observe the occupants. Although Trooper Molina was about ten to fifteen yards behind Appellant, Appellant did not acknowledge Trooper Molina's presence, but, rather, he continued to look at the engine.

Meanwhile, Trooper Molina could see that there was a passenger in the vehicle and could see the passenger "move stuff around her feet." Although the hood was up, Trooper Molina could see through a gap between the hood and the body of the vehicle. Trooper Molina later determined that the passenger was Amanda Millsap, Appellant's girlfriend.

Trooper Molina got out of his vehicle and walked up to Appellant. Trooper Molina first asked Appellant how he was doing and what the passenger in the vehicle was doing; then Trooper Molina drew his weapon and repeatedly instructed Millsap to place her hands in the air, since he observed her continuing to reach underneath her seat. Millsap complied, and Trooper Molina holstered his weapon; Millsap remained seated in the vehicle. Trooper Molina asked Appellant if "everything [was] okay," to which Appellant explained, as he continued to look at the vehicle's engine, that he smelled "something . . . burning" in his vehicle. Appellant later told Trooper Molina that it "smelled like plastic or something."

3

When Trooper Molina went to the passenger side door to speak with Millsap, she rolled down the window. As Millsap rolled down the window, Trooper Molina immediately smelled a chemical smell like that of burned methamphetamine. According to Trooper Molina, Millsap's facial expression and her rapidly beating jugular vein suggested that "something was ongoing."

While Trooper Molina was talking to Millsap, Appellant appeared to continue to examine the engine. At one point, Trooper Molina asked Appellant where they had come from, and Appellant told him that they had just left Abilene and were headed to Odessa for Appellant's appointment with his doctor. As the reason for the presence of the papers on the windows of the vehicle, Appellant told Trooper Molina that he had put the papers on the windows because of "the sun."

Trooper Molina asked Appellant multiple times for consent to search his vehicle. Appellant eventually consented but only after he insisted multiple times that the vehicle was not his.

Trooper Molina instructed Millsap to get out of the vehicle. As Millsap complied, a sex toy fell onto the floorboard of the passenger seat where Millsap had been sitting. Trooper Molina asked Millsap and Appellant, "Is that what's going on right here?" Millsap repeatedly stated, "[T]hat's what's going on"; Appellant said that they were "playing."

Before Trooper Molina searched the vehicle, he patted Appellant down. Trooper Molina found multiple lighters, a sex toy (in Appellant's pocket), and various other items.

Trooper Molina asked Appellant and Millsap whether there was anything in the vehicle he should know about. Appellant and Millsap denied that there was anything illegal in the vehicle.

4

Trooper Molina searched the vehicle and found a camera bag on the floorboard to the left side of the passenger seat. The camera bag was "kind of stuffed underneath the left passenger seat." Inside the camera bag, Trooper Molina found 0.28 grams of methamphetamine in a "blue baggy" and 0.33 grams of methamphetamine in a "white container."

The camera bag also contained two pipes and a straw. At trial, Trooper Molina testified that the pipes were "methamphetamine pipes" and that they were still warm to the touch when he found them. Trooper Molina also testified that straws are sometimes used to snort methamphetamine.

During the search, Trooper Molina asked Appellant and Millsap whether they had smoked methamphetamine in the vehicle. Appellant and Millsap both denied any use of methamphetamine in the vehicle, but Appellant admitted that he had "smoked some" methamphetamine about an hour prior to the traffic stop. As Trooper Molina continued to search the vehicle, he began to choke because of the smell.

Trooper Molina called Trooper Jeremy Usener to the scene to conduct a DWI investigation. When Trooper Usener arrived, he conducted several field sobriety tests on Appellant. Appellant passed all the tests that he performed for Trooper Usener. Appellant, however, refused to give a sample of his blood to Trooper Usener for lab testing.

Appellant told Trooper Usener that he was not aware of any drugs in the vehicle. As for the smell in the vehicle, Appellant explained that the smell came from gasoline that had leaked in the backseat. He told Trooper Usener that the person he borrowed the vehicle from had spilled gasoline in the vehicle the night before. He also repeated that, earlier that day, he had smoked a pipe, but he said that he did not know for sure whether the substance was methamphetamine, although he

"guess[ed] it was meth."  Texas Department of Public Safety lab personnel later confirmed that the substances found in the vehicle were methamphetamine.

A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses a controlled substance.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (West 2017).  Possession is defined as "actual care, custody, control, or management."  TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2018).  To prove unlawful possession of a controlled substance, the State must show (1) that the accused exercised control, management, or care over the substance and (2) that the accused knew the matter possessed was contraband.  *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 n.32 (Tex. Crim. App. 2015).

Texas courts have used an "affirmative links" analysis for instances when the accused was not in exclusive possession of the place where the substance was found. *Poindexter*, 153 S.W.3d at 406.  In such circumstances, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances that affirmatively link the accused to the contraband.  *Id.* (citing *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (listing affirmative links recognized by courts); *see also Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016) (citing *Evans*, 202 S.W.3d at 162 n.12).  The following links have been applied to infer knowledge relating to the contraband: (1) the defendant's presence when a search was conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested;

(7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Tate*, 500 S.W.3d at 414 (citing *Evans*, 202 S.W.3d at 162 n.12). It is not the number of links that is dispositive; rather, it is the logical force of all the evidence, both direct and circumstantial, that is the determining factor. *Evans*, 202 S.W.3d at 162.

Although Appellant was not in exclusive possession of the methamphetamine, the independent facts and circumstances justify the jury's conclusion that Appellant had possession of the methamphetamine and that he knew that the substance was methamphetamine. Appellant's own admission that he had smoked methamphetamine an hour prior to Trooper Molina's arrival is probative evidence from which a jury could have concluded that he knowingly possessed the same drug. Moreover, there was a strong odor of burned methamphetamine, as well as two warm methamphetamine pipes, in the vehicle that Appellant possessed.

Appellant essentially argues that, because he passed the field sobriety tests and showed no signs of methamphetamine intoxication, the evidence was insufficient to link him to the methamphetamine. We disagree. Although Appellant passed the field sobriety tests and although that would suggest that Appellant was not under the influence of methamphetamine at the time of Trooper Molina's arrival, the independent facts and circumstances are sufficient to support the jury's verdict. Appellant admitted that he had smoked methamphetamine one hour earlier. Although only two persons were in the vehicle, there were two warm pipes in the

same bag in which Trooper Molina found the methamphetamine. The inside of the vehicle smelled like burning methamphetamine. The view into the vehicle was obscured by papers that had been placed on the windows. We hold that any rational trier of fact could have found beyond a reasonable doubt that Appellant possessed methamphetamine. We overrule Appellant's sole issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE

February 21, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.