

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00161-CR

ADRIAN VALADEZ,

                                      **Appellant**

 v.

THE STATE OF TEXAS,

                                      **Appellee**

---

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2012-2160-C1

---

## MEMORANDUM OPINION ON REMAND

---

Appellant, Adrian Valadez, was convicted of unlawful possession of marihuana, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(4). A jury sentenced him to five years in prison and a fine of $8,500. On original submission, Valadez raised twenty-seven issues, and this Court overruled all of Valadez's issues and affirmed the judgment of the trial court. *See generally Valadez v. State*, No. 10-17-00161-CR, 2019 Tex. App. LEXIS 3934 (Tex. App.—Waco May 15, 2019) (mem. op., not

designated for publication), *rev'd*, No. PD-0574-19, 2022 Tex. App. LEXIS 217 (Tex. Crim. App. Mar. 30, 2022). The Court of Criminal Appeals reversed this Court's decision, concluding that trial court abused its discretion by admitting evidence of nine extraneous drug offenses over Valadez's objections. *See Valadez*, 2022 Tex. Crim. App. LEXIS 217, at **1-2. The Court of Criminal Appeals remanded this case for a harm analysis. *Id.* at *27.

The parties have submitted briefing on the narrow issue of whether Valadez was harmed by the trial court's erroneous admission of the extraneous drug offenses. Because we conclude that the trial court's error did not have a substantial and injurious effect or influence in determining the jury's verdict, we affirm the judgment of the trial court.

**Harm Analysis**

In one issue on remand, Valadez contends that extraneous-offense evidence was inherently inflammatory and, thus, had an injurious effect or influence on the jury's verdict such that his substantial rights were affected. Valadez argues that he was harmed by the trial court's erroneous admission of the extraneous-offense evidence and that this case should be remanded for a new trial "free of such errors."

FACTS

The Court of Criminal Appeals characterized the facts in this case as follows:

Appellant [Valadez] was the only backseat passenger of a car that was occupied by two other men and traveling northbound on I-35 outside of Waco when it was stopped for a window-tint violation.

Trooper Juan Rodriguez, a member of the Department of Public Safety's drug interdiction team, testified that upon approaching the car, he

noticed the smell of marihuana.  He tried to put the car's occupants at ease by telling the driver, Jose Aguillon, that he was going to give him a warning for the window-tint violation, but the effort to put them at ease failed.  When they were out of the car, Aguillon was fidgeting, and the front seat passenger, Johnny Penaloza, explained that the flakes of marihuana on his shorts were actually "linen," but he meant to say "lint."  Meanwhile, Appellant pretended to sleep in the back seat, and when he got out of the car he faked a yawn, avoided eye contact with Rodriguez, and took a "felony stretch."  Aguillon and Penaloza also stretched which Rodriguez opined is a way to expel nervousness.

After backup arrived[,] Rodriguez searched the car and discovered that the odor of marihuana was even stronger in the backseat, which he rated a seven or eight on a scale of ten.  He found marihuana flakes on the front seat and blunts in the ashtray.  A continuously ringing cell phone was in the console.  When he opened the utility door to the trunk from the backseat[,] the smell increased to a ten out of ten.  Over 18 pounds of marihuana were in the trunk.  Most of the marihuana was in two duffle bags, and the remainder was in the spare tire wheel well.  The duffle bags also contained dirty clothes and an open pack of t-shirts that matched the t-shirt worn by Aguillon.

The occupants of the car gave inconsistent answers about how long they planned to be in Waco.  Aguillon said they would be there for only a few hours whereas Appellant said a couple of days.  All three occupants claimed they were going to visit girls in Waco but none named any girls they knew there. Rodriguez testified that drug runners commonly rehearse a story about the destination and purpose for their travels but stumble on the details when pressed for more information.

The car's occupants did not seem surprised that they were being arrested.  At first, all three denied any knowledge of the marihuana, but Aguillon and Penaloza ultimately pled guilty to possessing the marihuana.  Appellant claimed he was an innocent passenger but seemed to relax after the marihuana was found.  Rodriguez testified that drug mules do not take innocent passengers along for the ride; everyone in the car is truly involved.  Drug runners tend to use two or more drivers on a run because time is money.  "If the car ain't moving, they are not making money.  It's a hurry up and go, get to the point, drop off, go back, load back up, and go."

Agent Christopher Dale, an investigator in DPS's Criminal Investigations Division, testified over hearsay objections that Appellant and his two fellow passengers refused to cooperate with his post-arrest effort to interview them to discover the marihuana's destination. The amount of marihuana found was a distribution amount, and people who run drugs do not bring innocent passengers with them. He expressed the opinion that the case against the car's three occupants was "pretty solid" because they "were in care, custody, and control of the bundles of marijuana that were in the car." All three knew or should have known there was criminal activity in the car because of the odor in it.

*Id.* at **2-5.

STANDARD OF REVIEW

The violation of an evidentiary rule that results in the erroneous admission of evidence constitutes non-constitutional error. *See Martin v. State*, 176 S.W.3d 887, 897 (Tex. App.—Fort Worth 2005, no pet.). Under Texas Rule of Appellate Procedure 44.2(b), an appellate court must disregard non-constitutional error unless the error affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is affected when the evidence, viewed in light of the record as a whole, had a substantial and injurious influence determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

> [N]on-constitutional error must be disregarded unless it affects the defendant's substantial rights. This court will not overturn a criminal conviction for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly. In considering the potential for harm, the focus is not on whether the outcome was proper despite the error, but whether the error had a substantial or injurious effect or influence on the jury's verdict. A conviction must be reversed for non-constitutional error if the reviewing court has grave doubt that the result of

the trial was free from the substantial effect of the error. Grave doubt means that in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error. In cases of grave doubt as to the harmlessness the petitioner must win.

*Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex. Crim. App. 2011) (internal citations & quotations omitted); *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

In conducting the harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005); *see Motilla*, 78 S.W.3d at 355-56.

DISCUSSION

Through the testimony of McLennan County Sheriff's Department Captain Steve January and Austin Police Department Detective Christopher Thomas, as well as copies of some of the judgments, the State presented evidence of nine extraneous drug offenses in which Valadez was purportedly involved. *See Valadez*, 2022 Tex. Crim. App. LEXIS 217, at **5-7. Eight of the extraneous drug offenses pertained to marihuana and the ninth extraneous drug offense involved cocaine. *See id.* The State argued that these offenses were necessary to rebut Valadez's defensive theory at trial that he was an innocent passenger in the vehicle and did not possess the requisite knowledge or intent to possess

the marihuana in this case. However, after reviewing the record as a whole, we have fair assurance that the erroneous admission of evidence of the extraneous drug offenses did not have a substantial and injurious effect or influence on the jury's verdict.

As we noted on original submission, and as stated by the Court of Criminal Appeals in its March 30, 2022 opinion, other compelling evidence linking Valadez to the marihuana included:

> First, the odor of fresh marihuana was overpowering in the back seat where Valadez was sitting. In fact, the smell emanated from a utility door leading to the trunk where Valadez had the most immediate access of any of the three co-defendants. Additionally, Valadez was nervous and evasive during the stop. He engaged in "the felony stretch" and was unable to provide details regarding where they were going and who they were going to see. Specifically, Valadez stated he was "along for the ride" and that he wanted to meet girls, but he did not know where they were going or any of the names of the girls they were going to meet. Trooper Rodriguez's testimony that Valadez relaxed and did not act surprised once the marihuana bundles were found also indicates a consciousness of guilt.

*Valadez*, 2019 Tex. App. LEXIS 3934, at **9-10; *see Valadez*, 2022 Tex. App. LEXIS 217, at *21 ("Since the State had other compelling evidence of guilt, the probative value of the extraneous drug evidence was less weighty than it otherwise might have been."); *see also Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011) (noting that to prove unlawful possession of a controlled substance, the State was required to prove beyond a reasonable doubt that: (1) Valadez exercised control, management, or care over the substance; and (2) he knew the matter possessed was contraband); *see also Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (listing factors used when considering

whether the accused was sufficiently linked to contraband)[1]; *Evans v. State*, 202 S.W.3d

158, 162 n.12 (Tex. Crim. App. 2006) (same).

In addition, the Court of Criminal Appeals noted Trooper Rodriguez's testimony

that,

> drug mules do not take innocent passengers along for the ride; everyone in
> the car is truly involved. Drug runners tend to use two or more drivers on
> a run because time is money. "If the car ain't moving, they are not making
> money. It's a hurry up and go, get to the point, drop off, go back, load back
> up, and go."

*Valadez*, 2022 Tex. Crim. App. LEXIS 217, at *4. Agent Dale also stated that the amount of

marihuana found in the trunk of the car was a distribution amount; that people who run

drugs do not bring innocent passengers with them; and that all three passengers knew or

should have known there was criminal activity in the car because of the marihuana odor

---

[1] Factors that courts consider when determining whether the accused was sufficiently linked to contraband include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband
> was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic;
> (4) whether the defendant was under the influence of narcotics when arrested; (5)
> whether the defendant possessed other contraband or narcotics when arrested; (6)
> whether the defendant made incriminating statements when arrested; (7) whether the
> defendant attempted to flee; (8) whether the defendant made furtive gestures; (9)
> whether there was an odor of contraband; (10) whether other contraband or drug
> paraphernalia were present; (11) whether the defendant owned or had the right to
> possess the place where the drugs were found; (12) whether the place where the drugs
> were found was enclosed; (13) whether the defendant was found with a large amount
> of cash; and (14) the conduct of the defendant indicated a consciousness of guilt.

*Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016). Texas courts have recognized that this is a nonexclusive list of factors that may be sufficient, either individually or in combination, to establish a defendant's possession of contraband. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, both direct and circumstantial." *Id.* at 162.

inside the car.  *Id.* at **4-5.  Marihuana flakes were found on the front seat; blunts were found in the ashtray; and a continuously ringing cell phone was in the console.  *Id.* at *3.  Furthermore, Valadez's "story about visiting Waco for a couple of days was belied by the lack of clothing and toiletries corresponding with such a stay and by Aguillon's characterization of their plans."  *Id.* at **20-21.

In addition to the foregoing, the State did not emphasize the extraneous drug offenses during opening statements or closing arguments.  In fact, only two brief references were made to the extraneous drug offenses during closing argument to show that Valadez "has had experience with marijuana before . . . ."  The focus of closing arguments was on the facts from the traffic stop.  The State did not mention the extraneous drug offenses during opening statements.

Although requested during the charge conference, the trial court refused to include a limiting instruction in the jury charge regarding this evidence because defense counsel did not request a limiting instruction at the time evidence of the extraneous drug offenses was introduced.  *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) ("This Court has previously held that, if a defendant does not request a limiting instruction under Rule 105 at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge."); *see also Steggall v. State*, No. 10-17-00017-CR, 2018 Tex. App. LEXIS 6228, at *3 (Tex. App.—Waco Aug. 8, 2018, pet. ref'd) (mem. op., not designated for publication) ("The trial court is not required

to include a limiting instruction in the jury charge when no instruction was requested at the time the evidence was admitted.").

Based on the foregoing, we have fair assurance that the erroneous admission of the extraneous drug offense evidence did not influence the jury or influenced the jury only slightly. *See Barshaw*, 342 S.W.3d at 93-94. Therefore, we conclude that the trial court's error in admitting evidence of the extraneous drug offenses did not affect Valadez's substantial rights and, therefore, must be disregarded. *See* TEX. R. APP. P. 44.2(b). Accordingly, we overrule Valadez's sole issue on remand.

## Conclusion

We affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion delivered and filed September 21, 2022
Do not publish
[CRPM]

