# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00402-CR

**Charles L. Sumrall, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 264TH DISTRICT COURT OF BELL COUNTY
### NO. 82987, THE HONORABLE STEVEN J. DUSKIE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The trial court convicted appellant Charles L. Sumrall of the state jail felony of possession of a controlled substance in an amount of less than one gram. *See* Tex. Health & Safety Code § 481.115(a), (b). In his sole appellate issue, Sumrall challenges the sufficiency of the evidence to support the trial court's finding that he knowingly or intentionally possessed the methamphetamine. Because we conclude that the evidence is sufficient but that there are clerical errors in the judgment, we modify the judgment to correct the errors and, as modified, affirm the judgment of conviction.

## BACKGROUND

On October 20, 2020, officers initiated a traffic stop of a vehicle in which Sumrall was sitting in the front passenger seat. When the traffic stop was initiated, the vehicle was parking in the parking lot of an apartment complex where Sumrall lived. As the officer

approached the vehicle, the driver was "already out" of the vehicle and "closing his door," and Sumrall was attempting to exit the vehicle. Initially, Sumrall was told to return to the vehicle but was later instructed to get out. Other officers responded to the traffic stop, the driver and Sumrall were questioned, and an officer conducted a canine "sniff" of the vehicle's exterior. After a canine "alert," the officers searched the vehicle and found methamphetamine in a zippered canvas bag on the driver side of the vehicle and in a Ziploc bag within a plastic Walmart shopping bag on the floorboard of the passenger side of the vehicle.

At the beginning of the bench trial, the parties stipulated that the substance "that was seized . . . from inside of a Wal-Mart bag on the front passenger floorboard" of the vehicle "contains methamphetamine and weighs .60 grams (+/- .06 grams) net weight." The exhibits that were admitted at trial included photographs of items found inside the vehicle and body-cam and in-car video recordings from the traffic stop. The recordings show the officer who initiated the traffic stop interacting with the driver, Sumrall interacting with other officers, the canine "alert" on the vehicle, and the officers searching the vehicle.

The State's witnesses were the officer who initiated the traffic stop, two other responding officers, and an expert in narcotics. The initiating officer testified that Sumrall "couldn't really stay still" and was "very fidgety," "very sweaty," breathing heavily, and smoking. The officer testified that the way that Sumrall was sweating and acting could have been an indication that he was nervous or "on a stimulant of some sort" or both. He also testified that it was significant that the driver and Sumrall attempted to get out of the vehicle as he approached because "it's usually an indication that they're trying to distance themselves from the vehicle." The officer further testified that the driver and Sumrall said that they were coming from Walmart and that the driver said that Sumrall "picked up a few items."

2

A Texas Department of Public Safety sergeant testified that he recovered the methamphetamine that Sumrall was charged with possessing; that the Walmart shopping bag was "partially closed," "laying there like you would just let go of a bag"; and that it looked as though the methamphetamine within the shopping bag had been "purposefully concealed." The top portion of the shopping bag contained mail belonging to Sumrall, and underneath were groceries. He could not recall if the methamphetamine was under or on top of the mail. He also testified about the "drug dealer amount" of methamphetamine and other "evidence of distribution" that was on the driver side of the vehicle. The canvas bag that was found on the driver side contained two bags of methamphetamine weighing approximately seven grams each. A digital scale, syringes, empty "jeweler" or "dealer" bags, and "banded money" with a $50 bill on the "outside" were also found. The sergeant testified that the driver "took ownership" of the methamphetamine in the canvas bag and the other items on the driver side but did not tell the sergeant that the methamphetamine on the passenger side belonged to him.[1] The sergeant further answered, "Yes," when asked based on his training and experience if it was "common when somebody has contraband and they get pulled over, they encounter law enforcement, to immediately try to exit and create time and space and distance from that contraband."

A lieutenant with the criminal investigation division of the Texas Department of Public Safety testified about his interactions with Sumrall during the traffic stop after Sumrall was arrested. In response to the lieutenant's question whether there was anything illegal in his apartment, Sumrall responded that there was a "pipe." They then went inside the apartment, which was 20 to 30 yards from where the vehicle was parked, and Sumrall showed the lieutenant

---

[1] The driver did not testify at trial, and the initiating officer testified that he did not ask the driver whether the methamphetamine found on the passenger side belonged to him.

the pipe that was in Sumrall's bedroom. Based on his examination of the pipe, the lieutenant testified that it "had brown in the bottom of the glass pipe that had been burnt," the "white substance" on the pipe was consistent with the ingestion of methamphetamine through the pipe, and the pipe had been used to smoke methamphetamine.

The narcotics expert testified that half a gram of methamphetamine was a "drug user" amount and the "going rate" for that amount would be $40 or $50 based on "the quality of it for the user." He also opined that "[y]ou would be looking at a dealer and a user, a dealer and a buyer, for the user amount" if one person had half a gram of methamphetamine in their possession and another person had "the jeweler baggies, the digital scale, syringes, large amount of cash and two individual 7-gram bags of methamphetamine."

The trial court found Sumrall guilty of possession of a controlled substance in an amount less than one gram. *See* Tex. Health & Safety Code § 481.115(b). At a subsequent sentencing hearing, Sumrall pleaded true to the two enhancement paragraphs in the indictment that alleged two prior state jail felony convictions for possession of a controlled substance in an amount less than one gram, and the trial court sentenced him to four years' confinement. *See* Tex. Penal Code §§ 12.34, .425(a). This appeal followed.

## ANALYSIS

*Standard of Review*

Sumrall's issue challenges the legal sufficiency of the evidence to support his conviction. "When reviewing whether there is legally sufficient evidence to support a criminal conviction, the standard of review we apply is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

4

elements of the crime beyond a reasonable doubt.'" *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

"The [factfinder] is the sole judge of credibility and weight to be attached to the testimony of witnesses, and [the factfinder] may draw multiple reasonable inferences from the facts so long as each is supported by the evidence presented at trial." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319). "On appeal, reviewing courts 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Murray*, 457 S.W.3d at 448 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination." *Id.* at 448–49 (citing *Hooper v. State*, 214 S.W.3d 9, 12 (Tex. Crim. App. 2007)).

*Sufficiency of the Evidence*

Sumrall does not dispute that methamphetamine is a controlled substance listed in Penalty Group 1, *see* Tex. Health & Safety Code § 481.102(6), or that methamphetamine weighing less than one gram was found in the vehicle in a plastic shopping bag on the floorboard right below where he had been sitting. His issue challenges the sufficiency of the evidence supporting the requisite culpable mental state—that he knowingly or intentionally possessed the methamphetamine. *See id.* § 481.115(a) (stating elements of offense); *see also* Tex. Penal Code

5

§§ 1.07(a)(39) (defining "possession" to mean "actual care, custody, control, or management"), 6.03(a) (defining culpable mental state of acting "intentionally"), (b) (defining culpable mental state of acting "knowingly"). Appellant argues that the evidence is legally insufficient as to the requisite culpable mental state because "the State failed to prove Sumrall was linked to the methamphetamine found in a car in which he was a passenger."

"To prove the requisite intent to possess, the State had to show that [Sumrall] (1) exercised control, management, or care over the substance in question and (2) that he knew that the substance was contraband." *See Tate*, 500 S.W.3d at 413 (citing Tex. Health & Safety Code § 481.115(a)). "A defendant's mere presence is insufficient to establish possession." *Id.* (citing *Oaks v. State*, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982)). "When the contraband is not in the exclusive possession of the defendant, a fact finder may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference." *Id.* at 413–14 (citing *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005)).

The Texas Court of Criminal Appeals has identified the following non-exclusive factors that "may indicate a link connecting the defendant to the knowing possession of contraband":

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed;

6

(13) whether the defendant was found with a large amount of cash; and

(14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 414 (quoting *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006)). It is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162. Further, "[a]lthough these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was [the factfinder] rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414 (citing *Jackson*, 443 U.S. at 318–19).

Sumrall concedes that he "was in an enclosed space (the car) when the contraband was found" and that "some evidence seems to suggest Sumrall might be linked to the contraband" but argues that the evidence failed to establish "to the requisite level of confidence" that his "connection to the illegal narcotic was more than just fortuitous." As support, he points to the evidence that the driver "took ownership" of the other methamphetamine found in the vehicle and had access to the Walmart shopping bag, that "there were no odors or other indicia of the presence of the contraband which could have alerted Sumrall to the presence of the illegal narcotics in the vehicle," that Sumrall cooperated with law enforcement in retrieving the pipe from his apartment, and that Sumrall "was not linked" to the vehicle itself. The evidence supported that he did not have ownership of or another connection with the vehicle except for being a passenger in it at the time of the traffic stop and that the methamphetamine that the officers found on the driver side was not visible because it was in the zippered canvas bag.

Sumrall also argues that: (i) because he cooperated with law enforcement to his detriment, "it may be argued he showed no consciousness of guilt"; (ii) "[w]hile a factfinder

7

could infer Sumrall's apparent nervous demeanor resulted from being caught with contraband, it could have as reasonably been the result of his detention by a large law enforcement task force contingent who converged on his location after the car's stop"; (iii) the methamphetamine in the Walmart shopping bag "could have been discarded by the driver as easily as [Sumrall]"; and (iv) although "an inference that the pipe offers links to the contraband is possible," "it is just as probable that the pipe had nothing to do with the contraband discovered in the car."

We, however, must presume that the factfinder resolved conflicting inferences in favor of the verdict and defer to that determination, *see Murray*, 457 S.W.3d at 448–49, and "[t]he absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present," *see James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (citing *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976)); *see also Jones v. State*, 466 S.W.3d 252, 260 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

Here the evidence showed that a "drug user" amount of methamphetamine was on the vehicle's passenger side right below where Sumrall was sitting when the officer initiated the traffic stop. *See Tate*, 500 S.W.3d at 414 (listing among factors "defendant's proximity to and the accessibility of the narcotic" and whether place where drugs were found was enclosed); *see also Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981) (deciding that evidence was sufficient to prove appellant's knowledge and control of contraband, in part, because contraband was found inside automobile, which was "an enclosed area," on "floorboard directly in front of" appellant's seat and "on the same side of the car seat as that in which appellant was sitting"). The plastic shopping bag also contained groceries and mail addressed to Sumrall. *See Villegas v. State*, 871 S.W.2d 894, 896 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (identifying

8

contraband's "location in relationship to the defendant's personal belongings" as link to be considered). The driver and Sumrall told the officer that they were coming from Walmart, and the driver told the officer that Sumrall had "picked up a few items."

The sergeant also testified that that it looked like the methamphetamine within the shopping bag had been "purposefully concealed," the evidence showed that Sumrall owned a pipe that had been used to smoke methamphetamine, and the officer testified that Sumrall was showing signs of being under the influence of a stimulant and that he attempted to exit the vehicle when the officer initially approached, which was "usually an indication that they're trying to distance themselves from the vehicle." *See Tate*, 500 S.W.3d at 414 (listing among factors whether defendant possessed other contraband when arrested, whether defendant was under influence of narcotic when arrested, and whether conduct of defendant "indicated a consciousness of guilt").

The trial court also reasonably could have inferred from the expert's testimony and the evidence of the "dealer" amount of methamphetamine and other drug-related items that the officers found on the driver side that Sumrall had purchased the "drug user" amount of methamphetamine contained in the Ziploc bag from the driver. On the driver side, the officers found the canvas bag that contained two bags of methamphetamine weighing approximately seven grams each, a digital scale, syringes, empty "jeweler" or "dealer" bags, and "banded money" with a $50 bill on the "outside." In contrast, the expert testified that the approximate cost of the amount of methamphetamine contained in the Ziploc bag on the passenger side was $40 to $50 and opined that "[y]ou would be looking at a dealer and user, a dealer and a buyer" in the type of factual scenario that was before the trial court.

9

From the combined and cumulative force of the evidence, the trial court reasonably could have found that there were "sufficient independent facts and circumstances justifying" an inference that Sumrall "intentionally or knowingly possessed" the methamphetamine. *See Tate*, 500 S.W.3d at 413–14. Thus, we conclude that the evidence was legally sufficient to support the trial court's finding beyond a reasonable doubt that Sumrall knowingly or intentionally possessed the methamphetamine. *See id*. We overrule Sumrall's sole issue on appeal.

### Clerical Errors in Judgment

In its brief, the State represents that there are clerical errors in the judgment because it reflects that Sumrall pleaded "not true" to both enhancement paragraphs in the indictment when the record reflects that he pleaded "true" to the paragraphs and, therefore, that the errors in the judgment should be corrected. We also observe that the judgment states that the statute for the offense is section 481.116(b) of the Texas Health and Safety Code when the record reflects that the statute for the offense is section 481.115(b) of the Texas Health and Safety Code. *See* Tex. Health & Safety Code §§ 481.115(b), .116(b).

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Because the necessary information is available here, we modify the judgment of conviction to reflect that Sumrall's pleas to the enhancement paragraphs were "TRUE" and that the statute for the offense was section 481.115(b) of the Texas Health and Safety Code.

## CONCLUSION

For these reasons, we modify the judgment as stated above and, as modified, affirm the trial court's judgment of conviction.

_____

Rosa Lopez Theofanis, Justice

Before Justices Baker, Triana, and Theofanis

Modified and, as Modified, Affirmed

Filed:   April 6, 2023

Do Not Publish

11